UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PAUL HENRY,

                Petitioner,

        -against-

THOMAS LaVALLEY, SUPERINTENDENT,

                Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

12 CV 2849 (RJD)

DEARIE, District Judge.

    Before the Court is the pro se application of petitioner Paul Henry for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Overview**[1]

    Following a jury trial in 2006, petitioner was convicted of six counts of first degree robbery along with related conspiracy and weapons charges stemming from his participation in a pattern of criminal conduct committed in Nassau County during the fall of 2005. The series of crimes include the armed robbery of a Citibank in Westbury on September 2, 2005, the armed robbery of a casino gambling boat docked in Freeport on October 1, 2005, and an attempted robbery of a Bank of America in Baldwin on November 21, 2005 that was thwarted by the presence of police investigating the earlier crimes.

    Following a valid <u>Miranda</u> waiver, petitioner confessed to each of these crimes in

---

[1] The Court writes only for the parties, whose familiarity with the extensive state court record is assumed, and sets forth only the facts necessary for context and the disposition of petitioner's claims. Particulars are addressed within the legal discussion of the claim to which they relate.

separate statements made during his first thirteen hours in police custody. Although surveillance video captured the robberies and there were numerous eyewitnesses, the confessions were central to the state's case because the robbers wore masks and gloves and no forensic evidence was obtained.

For his crimes, petitioner was sentenced principally to thirty years imprisonment (a determinate term of 15 years on each of the robbery counts, with one term running consecutive to the other five).

In his petition for habeas relief, petitioner advances six claims. His principal assertion is that his confessions were the product of physical abuse by the police. He alleges, inter alia, that he was "taken for a ride of unknown duration, choked on two occasions," had his "head battered on several occasions" and was "beaten and threaten[ed] with death to his person by Nassau County Law Enforcement Officers." Petition, ECF #1, at 7.

Additionally, petitioner claims that: (i) the second and third of his three confessions, made after a transfer to a different venue for questioning by a different detective, should have been suppressed because his <u>Miranda</u> warnings were not repeated; (ii) counsel was ineffective for failing to introduce medical reports in support of the claim of police abuse; (iii) the prosecution failed to provide timely disclosure of witness pre-trial statements as required by <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961); (iv) the indictment should have been dismissed because the evidence before the grand jury on the weapons charges was inadequate; and (v) his sentence was excessive and vindictive.

As discussed below, there is simply no evidence supporting the allegation of physical abuse. Petitioner's coerced-confession claim, therefore, does not establish a basis for habeas relief. As for the remaining claims, all of which were rejected by the state courts, petitioner fails

to show that the applicable state court ruling is deficient in the manner required by the habeas statute.[2] The Court therefore denies the application for habeas relief in its entirety.

## DISCUSSION

I.  **Petitioner's Claim that His Confessions Were Coerced by Physical Abuse**

*A. The Coercion Claim at the Felony Exam*

Petitioner auditioned his coercion claim at the felony exam held on December 5, 2005 in Nassau County District Court before Judge Christopher Quinn. Defense counsel Michael D. Elbert requested an adjournment because he was awaiting documents relating to petitioner's physical condition at the time of arrest, which he said were relevant to the claim that "the police coerced [petitioner's] statement through physical violence." Transcript of Felony Exam ("FE"), ECF # 20-2, at 4. The court denied the request to postpone without comment. Petitioner also addressed the court himself in support a pro se motion to dismiss the indictment. He stated: "I feared for my life and after being beaten, threatened with death to my person, choked and intimidated, I made numerous statements incriminating myself . . . All statements were coerced." FE at 7. The prosecution urged that the subject of coercion be deferred until the suppression hearing, and Judge Quinn denied petitioner's pro se motion without comment.

During the felony exam defense counsel nevertheless posed a handful of questions about

---

[2] The parties are referred to the Court's two most recent habeas decisions, which contain plenary recitations of the controlling legal standards. Morales v. LaValley, 12 CV 4584 (RJD), 2015 WL 4645350 (E.D.N.Y. Aug. 4, 2015); Masaguilar v. Bradt, 12 CV 3052 (RJD), 2015 WL 4645342 (E.D.N.Y. Aug. 4, 2015).

3

petitioner's physical condition to the officer who first interrogated him (Nassau County Detective Frank Berlanga), who testified that petitioner appeared to have bruising on his face as a result of the actions required to apprehend him and did not appear to require medical treatment. See FE at 24-25 (petitioner had a "bruise on his face" that petitioner "told him" he got "[w]hen he hit the curb").

Counsel also returned to the subject of coercion at the close of the felony exam: "Judge, Detective Berlanga testified that he observed the defendant with bruising on his face. Judge, there were more injuries. He was a bit evasive about his injuries. Our position is that our client did not make any statements willingly or voluntarily. He was forced to make the statement. Since the statement is the only thing that connects him to the crime, it's our position that the People have not established credible and reasonable cause to believe that he committed any crime." FE at 40-41. The court did not address the claim of injury and found reasonable cause to believe that petitioner committed a felony. FE at 41.

*B. The Suppression Hearing*

The question of voluntariness received plenary treatment at a twelve-day suppression hearing held before Acting Supreme Court Justice Jerald S. Carter in the Nassau County District Court between June 19 and August 1, 2006. Police testimony established the following:

On November 21, 2005, while surveilling a Bank of America in Baldwin as part of their investigation into the series of robberies, Nassau County Police Officers Joseph Hughes and Philip Brady observed a vehicle matching the description of the getaway vehicle in the earlier robberies enter the bank's parking lot. The men inside the car put on masks but, apparently noticing the police presence, suddenly drove off. Officers Hughes and Brady pursued the vehicle through local streets as it ran a red light, drove against oncoming traffic on several roads

4

including busy Sunrise Highway, and eventually came to a stop on a side street as it collided with a pole. Petitioner, carrying a gun, ran from the vehicle and Hughes followed on foot. The chase continued through several residential yards, over fences, and for several blocks. Twice petitioner pointed the gun at Hughes, who fired back. Brady eventually drove past Hughes, jumped out of his vehicle, and wrestled petitioner to the ground. At the time he was apprehended, petitioner was in possession of a .38 caliber revolver, facemask and latex glove.

Nassau County Detective Frank Berlanga reported to the scene at approximately 9:32 a.m. and transported petitioner to the First Precinct in Baldwin, an eight-minute trip, and signed him into the blotter at 9:40 a.m. At approximately 9:55 a.m., petitioner was brought to an interview room, where Detective Paul Read, in the presence of Detective Berlanga, read him his Miranda rights from a card. Petitioner stated that he understood them and then waived them. (The rights card bears a time notation and the signatures of both Detective Berlanga and petitioner).

Petitioner initially said he had been driving around that day looking for car parts. Within about an hour, however, he admitted that he was involved in a plan to rob the Baldwin branch of Bank of America that morning (his role was to guard the door) and that he was armed. Detective Read took notes and, at approximately noon, began preparing a written statement, which he completed at approximately 12:50 p.m. Petitioner's demeanor during this time was "very calm, very cooperative, very soft-spoken" and his "overall physical condition" was "good."

At approximately 1:05 p.m., Read and Berlanga left the First Precinct with petitioner and drove him to the Robbery Squad in Bellmore, which was investigating the other robberies. The detectives told petitioner that the move was part of an "ongoing investigation." After making stops in South Hempstead to check on petitioner's and another suspect's vehicles, they reached

Bellmore at 2:10 p.m. Petitioner was logged in and handed over to Robbery Squad Detective John Comiskey, who questioned him.

Petitioner admitted to Detective Comiskey that he and another individual had planned and carried out several bank robberies and the casino-boat robbery. At approximately 4:30 p.m., petitioner ate a meal (pizza and a soda), and between approximately 5:45 p.m. and 7:00 p.m., Detective Comiskey reduced petitioner's remarks regarding the casino boat robbery to a three-page statement. After signing the statement, petitioner then identified himself in the surveillance photos of the crime and admitted that he was the one with the shotgun. Petitioner signed a written version of these remarks as a supplement to the casino robbery confession.

Petitioner took a bathroom break, ate more pizza, and at approximately 9 p.m., questioning turned to the robbery of the Citibank in Westbury on September 2, 2005. Petitioner admitted his participation and again identified himself in surveillance video of the crime. Comiskey reduced petitioner's remarks to a written statement, which petitioner signed at approximately 10:45 p.m.

The possibility that petitioner suffered physical mistreatment at the hands of police was fully explored during cross-examination. As at the felony exam, the most that counsel succeeded in eliciting was that petitioner had some bruising or an abrasion on one or both cheeks as a result of the actions required to apprehend him. The detectives were unwavering in their testimony that petitioner did not appear to be bleeding or say that he was, that he did not require medical attention, that he did not complain of any other injuries, and that he did not suffer additional injury while in their custody. See, e.g., Suppression Hearing Transcript at 13, 57-8, 134-35, 155-57, 169, 185.

At the close of the suppression hearing, Justice Carter issued a written decision in which

he found, inter alia, that "[petitioner] was apprised of his constitutional rights after which he made knowing, voluntary and inculpatory statements." Suppression Hearing Decision dated October 3, 2006, ECF no. 20-1, at 6.

*C. The Coercion Claim at Trial*

At trial before Supreme Court Justice Arthur Diamond, defense counsel had the opportunity to question Detective Berlanga about the First Precinct log, which the prosecution had produced after Berlanga testified at the suppression hearing. According to the log, petitioner was signed in, as Berlanga had initially testified, at 9:40 a.m., but Berlanga conceded that the entry was hard to read. Berlanga also could not definitively refute counsel's suggestion that the entry was written over, and conceded that the log had no date. More critically, the log indicated that petitioner was signed out of the First Precinct at 11:15 a.m. rather than at 1:05 p.m. as Berlanga testified. Berlanga acknowledged the discrepancy but reiterated that he signed petitioner out at 1:05 and added that it was in the "squad log book." On redirect, the prosecution established the existence of two log books, including one that contained a log-out entry for 1:05 p.m. Trial Transcript at 728-736, ECF # 10-17 at 142-150.

In addition, counsel asked Berlanga to explain why, while being booked at the First Precinct, petitioner was photographed only from the back. Berlanga said it was because the precinct had run out of film. Trial Transcript at 725. Counsel also asked Comiskey if he had choked petitioner and if he had beaten him about the head, and Comiskey said no. Finally, counsel elicited that video equipment was available during the interrogation of petitioner but not used, and introduced a forensics report confirming the presence of blood on a jacket petitioner was wearing at the time of his arrest. To his credit, counsel's passionate and thorough summation advanced all the suggestions of police misconduct that these facts might allow. Trial

7

Transcript at 898 et seq., ECF # 10-19 at 7 et seq.

   *D. This Court's Initial Concerns*

Despite the fact that petitioner's coercion claim was capably argued at trial and rejected by the jury, several features of the record that bear on petitioner's claim of police abuse were initially of concern to this Court. The first is the suppression hearing court's decision: its conclusion that petitioner's statements were voluntary is within a written decision that also contains a factual summary patently at odds with the police testimony at the hearing. Judge Carter found, contrary to the evidence, that petitioner was taken to the Robbery Squad after his arrest, that Detective Comiskey administered his Miranda warnings there, and that it was in response to questioning from Comiskey that petitioner confessed to the attempt to rob the Bank of America on the morning of his arrest. As discussed, however, Detective Berlanga testified that upon arrest petitioner was brought *to the First Precinct*, not the Robbery Squad, that it was *there* that petitioner was Mirandized, that *it was Detective Read*, not Comiskey, who administered the warnings, and that it was *during questioning by Read*, not Comiskey, that petitioner made the confession to the attempted robbery of the Bank of America.

Common sense says that it would be wrong to overlook these errors as the mere interchange of names in an otherwise reliable account, or the result of comparable inadvertence. Likewise, in the context of a voluntariness challenge, it would be reckless to declare immaterial such particulars as where, when and by whom a defendant was Mirandized, or to whom he made his confession. Indeed, as noted, a separate branch of petitioner's claim is that the statements he made to Detective Comiskey at the Robbery Squad should have been suppressed for the separate reason that he was not *re*-Mirandized after leaving the First Precinct. And yet, given the content and contours of petitioner's claim and the parties' positions here, this defect in the hearing

8

court's decision is ultimately of no consequence to the adjudication of petitioner's claim that his confessions were the product of physical abuse.

As a threshold matter the Court notes that although neither party addresses this feature of the hearing court's decision, both rely on the chronology of events consistent with the actual testimony and on which the Court here relies.[3] In addition, petitioner's claim that he was beaten is broad and sweeping—but *not* embedded in a material way into the narrative of the day of interrogation, or otherwise particularized or linked to the specifics of actor, venue, time, or chronology. Notably, when petitioner again gave voice to the beating claim—in a post-verdict appearance in the trial court—he said to Justice Diamond: "The police beat me. I was in police custody for 20 hours. Police beat me, sir. Police beat me at the Baldwin precinct . . . When I got into Bellmore, police beat me there." Transcript of Proceedings November 29, 2006, ECF # 10-21 at 4-5. Accordingly, the Court believes petitioner's claim that he was beaten can fairly be adjudicated independent of the erroneous chronology contained in the suppression hearing court's written decision, which is silent on the matter at issue here.

In any event, this defect in the hearing court's decision was only one of several troubling features of the record that, in combination, prompted the Court to examine the record with heightened scrutiny and to expand it.[4] This Court's initial concerns included the fact that *neither*

---

[3] Petitioner, appearing pro se, has submitted the state appellate brief filed by counsel and relabeled it as his memorandum in support of the petition for habeas relief. Respondent, for its part, most certainly *should* have addressed this feature of the hearing court's decision, and the Court continues to remain uncomfortable with the fact that the suppression hearing court's decision was omitted from the state court record respondent initially filed and only produced in response to a specific request from the Court.

[4] Among other things, by Order dated May 28, 2015 (ECF # 21), the Court directed respondent to produce any and all materials relating in any way to petitioner's claim that he was beaten. The

9

court to whom petitioner unequivocally voiced his complaint that police beat him squarely addressed the allegation. At the felony exam Judge Quinn, as noted, denied petitioner's pro se motion without comment; post-trial, Justice Diamond likewise treated petitioner's remarks as a pro se motion (there, to set aside the verdict on the grounds of counsel's ineffectiveness) and then denied that motion in a written decision that did not reach the beating allegations. See Decision and Order Denying Motion to Set Aside Verdict dated January 11, 2007, ECF # 20. The pro se motion specifically asserted: "Information that should have been placed in the record at my suppression hearing . . . never was. And information that should have been presented at trial never was . . . If you look at that report it will show . .. that I had body contusions in four areas. . .and that medical report right there reflects that I had body trauma in four areas." Transcript of Proceedings 11/29/06 at 4-5. Justice Diamond's decision, however, states at the outset that it "will not address each" of petitioner's complaints but "will address several main points," and concludes that "petitioner's complaints against his counsel are without substance" and that his "remaining contentions, to the extent they are not *dehors* the record, are equally meritless." Decision January 11, 2007 at 1, 3. (Any materials purporting to be those referred to in petitioner's remarks were of course among those this Court directed respondent to produce).

Finally, it was striking to the Court that the allegation of police brutality was voiced in its unequivocal version only by petitioner acting pro se, and only on the outer periphery of the trial court proceedings—*before* the suppression hearing (in the Felony Exam) and *after* trial (in the motion to set aside the verdict)—whereas, in the hands of counsel at the suppression hearing and

---

responsive materials include numerous medical, police and other records. See ECF # 23-1 through 23-9)

at trial, the claim was advanced by argument and only as far as the evidence would allow. This observation does not automatically taint the bona fides of the beating allegations because of petitioner's separate allegation in the trial court and again here that counsel was ineffective for not adequately litigating his claim that police beat him.

   *E. Disposition*

Having reviewed record as supplemented, the Court's concerns have been allayed. At the end of the day, the nature of any allegation must yield to lack of proof and here, there is simply no evidence that petitioner was beaten "at" the First Precinct or "at" the Robbery Squad (as he complained to Judge Diamond before sentencing), or during the "ride of unknown duration" between the venues (as he asserts in the petition). Notably, the only injuries for which there is evidence are those that occurred at the time of arrest—which the record makes clear are the result of petitioner's reckless flight from the scene of his latest crime and the actions then required to apprehend him. Notably, on a physical condition questionnaire completed at the Bellmore facility in the hours following his confessions and bearing his signature, petitioner reports only as follows: "I have scratches on my face from rolling on ground while being arrested." ECF # 23-9 at 6. Other forms make the same assertion. See e.g., ECF # 23-3 ("Medical Condition of Defendant Questionnaire, completed at the First Precinct and bearing petitioner's signature) ("right cheek abrasion/left laceration on cheek . . . occurred today during arrest at the crime scene…"); ECF #23-4 ("Nassau County Police Department Physical Condition Questionnaire" completed 4:05 a.m. on Nov. 22, 2005 at Bellmore facility and bearing

petitioner's signature) (petitioner circled "NO" to question "Do you have any injuries.").[5]

In sum, petitioner's claim that his statements were the product of physical abuse was aggressively advanced at trial and rejected by the jury, and nothing in the habeas petition or the state court record as supplemented by order of this Court requires that the question be re-opened.

Petitioner's allegations do not place the other material circumstances of his interrogation at issue. See generally Arizona v. Fulminante, 499 U.S. 279, 285-89 (1991) (voluntariness of a confession determined by totality of the circumstances); Miranda v. Arizona, 384 U.S. 436 (1969) (voluntariness of waiver determined by totality of circumstances). There is also no evidence independently triggering concerns in that regard, or otherwise suggesting that petitioner's "will was overborne at the time he confessed." Reck v. Pate, 367 U.S. 433, 440 (1961). Therefore, petitioner's claim that his confessions were coerced does not present a basis for habeas relief.

## II.     Petitioner's Additional Claims

### A.     The Failure to Re-Mirandize

Petitioner claims that the two confessions he made at the Robbery Squad should have been suppressed for the separate reason that they were not preceded by a renewal of the Miranda warnings. The claim was raised on direct appeal and the Appellate Division rejected it

---

[5] In addition, Court records show that petitioner filed a federal civil rights complaint against Detectives Hughes, Brady, Berlanga, Read and Comiskey alleging that the arresting officers used excessive force during his arrest, causing "contusions on both sides of [his] face," and that he was beaten and choked before he incriminated himself. Henry v. Berlanga, 06 CV 6898 (JS) (Complaint, ECF #1). The complaint was dismissed with prejudice because of petitioner's failure to prosecute. ECF # 90 (Order of Judge Seybert dated June 12, 2012).

summarily as of one of petitioner's "remaining claims" that it determined to be "without merit." Henry, 76 A.D.3d at 683. To obtain habeas relief, petitioner must show that in rejecting his claim, the Appellate Division applied a rule that was contrary to or an unreasonable application of the controlling Supreme Court law, Wyrick v. Fields, 459 U.S. 42 (1982), but he cannot. Wyrick does not require renewal of Miranda warnings because of delay alone but only when "the circumstances change[ ] so seriously that [the suspect's] answers no longer [are] voluntary, or. . . [the suspect] no longer [is] making a 'knowing and intelligent relinquishment or abandonment' of his rights." 459 U.S. at 48 (quoting Edwards v. Arizona, 451 U.S. 477, 482 (1981)). See also Bridges v. Valley, 2011 WL 2708723, *2 (E.D.N.Y. July 11, 2011) (Cogan, J.) (eighteen hours between Miranda waiver and confession did not require renewed warnings under Wyrick) (collecting additional cases). Absent the passage of time alone, petitioner can point only to the new venue and different interrogating officer as changed circumstances, but it would not have been an unreasonable application of Wyrick for the Appellate Division to conclude that these changes were not "serious" enough to invalidate petitioner's earlier relinquishment of his rights.

In sum, the Court is not aware of any Supreme Court holding that would require renewal of Miranda warnings under the facts presented here. Petitioner's assertion to the contrary therefore is not a basis for habeas relief.

**B.    The Ineffective Assistance of Counsel Claim**

The petition alleges that counsel was ineffective for "fail[ing] to present direct evidence of medical reports in support of petitioner's coercion defense." Petition (ECF #1) at 7. He raised this claim on direct appeal, but the Appellate Division rejected it. People v. Henry, 76 A.D.3d 683, 683 (2d Dep't 2010) (petitioner "was not deprived of the effective assistance of

counsel, as defense counsel provided meaningful representation"), lv. app. denied, 15 N.Y.3d 953 (2010). As noted, the record does not contain any materials supporting the coercion claim. Therefore, the Court readily concludes that petitioner did not suffer the requisite prejudice under Strickland v. Washington, 466 U.S. 668, 697 (1984) (lack of prejudice disposes of ineffectiveness claim without reaching question of whether counsel's performance was deficient).[6] For these reasons, the Appellate Division's rejection of petitioner's ineffectiveness claim was neither factually nor legally unreasonable within the meaning of 28 U.S.C. § 2254. Further, it is well established that the appellate court's citation of People v. Benevento, 91 N.Y.2d 708 (1998), rather than Strickland, is not to the contrary. See Rosario v. Ercole, 601 F.3d 118, 125-26 (2d Cir. 2010).

As additional branches of the ineffectiveness claim, the petition alleges that counsel failed to make use of discovery material that would have impeached prosecution witnesses, that counsel did not conduct an investigation, that counsel did not present a defense, and that counsel suffered from a "conflict of interest" in that "he had a family to support and maintain." Petition (ECF # 1) at 8. These allegations were not advanced in petitioner's appeal and so are unexhausted, but the Court nevertheless may and does deny them on the merits as conclusory and unsupported. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). In fact, the hearing and trial transcripts reveal that counsel was persistent and probing in his efforts to uncover, through cross-examination, some morsel

---

[6] The Court directed, and counsel eventually provided, an affidavit that is unhelpful on the subject. See Affidavit of Michael Elbert, Esq. dated July 10, 2015, ECF # 23-1 at ¶ 2 (counsel "do[es] not recall whether medical records existed or whether they were used at trial").

that might bolster the theme of police abuse, and passionate and thorough in compiling for the jury, in summation, all the inferences favorable to petitioner that the evidence would permit.

**C.     The Rosario Claim**

Petitioner claims that he was unfairly prejudice by the late disclosure of materials required by People v. Rosario, 9 N.Y.2d 286 (1961), cert. denied, 368 U.S. 866 (1961). The Rosario rule, however, is strictly a creature of state law. See New York Criminal Procedure Law § 240.45(1). An alleged Rosario violation, therefore, is not cognizable here. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). See generally Green v. Artuz, 990 F. Supp. 267, 274 (S.D.N.Y. 1998) ("the failure to turn over Rosario material is not a basis for habeas relief as the Rosario rule is purely one of [ ] state law"); Warren v. Goord, 06 CV 1423 (RRM), 2013 WL 1310465, at *9 (E.D.N.Y. Mar. 28, 2013) (same).

In any event, petitioner cannot show that he was prejudiced by the disclosures of which he complains. The first involved the notes of Detective Read describing the chronology of his activities during the time that included the transfer of petitioner from the First Precinct to the Robbery Squad, which were turned over two days before jury selection began. Although it is not clear that the disclosure violated the Rosario rule, which requires disclosure before opening statements, see C.P.L. § 240.45(1)(a), the trial court nevertheless precluded Read from testifying about events occurring at 1:05 p.m., 1:35 p.m., and 1:40 p.m. Read ultimately did not testify.

A second involves the eve-of-trial disclosure of notes from Detective Comiskey concerning a possible additional suspect in the Citibank robbery (the notes are from an interview of a bank employee who said she saw a suspicious man outside the bank a few days before the crime). Treating petitioner's complaint about the late disclosure of the notes as arising under

15

Brady v. Maryland, 373 U.S. 83 (1963), rather than Rosario, the trial court denied relief on the ground that the possibility of an undisclosed additional suspect was not necessarily exculpatory. In any event, the interviewed bank employee eventually testified at trial on behalf of the defense.

Thus, even if these claims were cognizable here, petitioner cannot show that he was prejudiced. To the extent a portion or all of his claim can be construed as arising under Brady rather than Rosario or as asserting a cumulative due process violation, petitioner cannot show that he suffered the prejudice required to prevail on any such claim. The Appellate Division's silent rejection of the late-disclosure claim, therefore, was not factually unreasonable or contrary to or an unreasonable application of federal constitutional law.

For all these reasons, petitioner's Rosario-based claims do not warrant habeas relief.

### D. The Grand Jury Claim

Petitioner next claims that the indictment should have been dismissed in its entirety "because the evidence before the Grand Jury was legally insufficient to sustain the charges of weapons possession." Petition at 13. Petitioner advanced this claim in a post-conviction motion under C.P.L. § 440.10 in Nassau County Court, where he asserted that in the wake of the closure of the Nassau County Police Department's Crime Lab, there was a strong presumption that the weapons expert who testified before the grand jury may have misrepresented and misled the grand jury with false testimony. County Court Judge James P. McCormack denied the claim in a written decision, concluding that petitioner's allegations were "bare, speculative and conclusory" and that he failed to establish that any perjured or improper evidence was presented to the grand jury. People v. Henry, Ind. 2826N/05, Decision and Order entered August 17, 2011 at 4, ECF # 10-36 at 4.

Passing over possible procedural infirmities, the Court rejects this claim as a basis for habeas relief. It is well established that "[c]laims of deficiencies in state grand jury proceedings are generally not cognizable in a habeas corpus proceeding in federal court," and, in any event, that "[a]ny grand jury deficiencies are rendered harmless by a petit jury conviction assessing petitioner's guilt under a heightened standard of proof." Occhione v. Capra, No. 14-CV-3637, __ F. Supp.3d __, 2015 WL 3879534, at *17 (E.D.N.Y. June 24, 2015) (Weinstein, J.) (citing additional authorities).

### E. The Sentencing Claim

Petitioner's claim that his sentence was harsh and vindictive is not exhausted. He did not raise it on direct appeal, and in a post-conviction motion challenging his sentence he argued only that he was improperly adjudicated a persistent violent felony offender. The 440 court denied that motion on the ground that petitioner was not in fact sentenced as a persistent violent felon. People v. Henry, Ind. 2826N-05, Decision and Order (Supreme Co. Nassau Cty. Dec. 6, 2010) at 2, ECF #10-42 at 2.

In any event, the claim is meritless. Because petitioner's determinate sentence of fifteen years on each count is less than the maximum authorized by New York law,[7] his excessive-sentencing claim does not present a cognizable habeas issue. See, e.g., Cooke v. Graham, 06 CV 3053 (DLI), 2009 WL 3111790 at *9 (E.D.N.Y. 2009) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law") (quoting White v.

---

[7] See N.Y. Penal Law §§ 160.15 (4) and 70.02[1] [a] (robbery in the first degree is a Class B violent felony offense) and 70.02[3][a] (maximum sentence for each Class B violent felony offense is 25 years).

Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)). To the extent petitioner separately alleges that the court sentenced him vindictively in retaliation for his plan to sue the Nassau County Police Department in federal court, the claim cannot be entertained because nothing in the record supports petitioner's self-serving assertion.

## CONCLUSION

For the reasons discussed, Paul Henry's application for relief under 28 U.S.C. § 2254 is denied and the petition is dismissed. Because Henry has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
      August 18, 2015                                       /s/ Judge Raymond J. Dearie

                                                                          RAYMOND J. DEARIE
                                                                          United States District Judge